UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID L. BELMONTE,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>KING COUNTY, *et al*.,<br><br>　　　　　　　Defendants. | CASE NO. 2:24-cv-00518-JNW-DWC<br><br>ORDER DECLINING TO SERVE COMPLAINT |

Plaintiff David L. Belmonte (also known as Damers Shirak Duranzan), proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's complaint under 28 U.S.C. §1915A, the Court declines to serve the complaint but provides Plaintiff leave to file an amended pleading by May 23, 2024, to cure the deficiencies identified herein.

I.     **Background**

Plaintiff is currently detained at King County Jail, where is awaiting trial in an ongoing state-court prosecution. *See* Dkt. 1-1. He filed this suit challenging different aspects of his state-court prosecution and the conditions of confinement at King County Jail. *Id*.

1   Starting with the on-going prosecution, Plaintiff claims he is being denied ineffective
2   assistance of counsel. *Id.* at 6–7. He further claims his speedy trial rights are being violated and,
3   because of pretrial delays, a critical defense witness has died and will be unavailable to testify on
4   his behalf. *Id.* at 12.

5   Regarding the conditions at King County Jail, Plaintiff alleges he is being denied
6   adequate mental health treatment for his anxiety, depression, and Post-Traumatic Stress Disorder
7   ("PTSD"). *Id.* at 8. As a result of this inadequate treatment, Plaintiff states he was hospitalized
8   for several days and nearly died "due to the negligence" of several defendants. *Id.* at 9.

9   Plaintiff's final claim is about the religious meals provided at King County Jail. Dkt. 9–
10  10. At different points during his year-long pretrial detention, Plaintiff has been on a religious
11  meal plan. *Id.* While he is on the plan, Plaintiff states he is unable to sufficiently supplement his
12  religious meals in a way that maintains proper nutrition. *Id.* Although he has spent anywhere
13  from $50 to $125 a week on religious foods available for purchase, Plaintiff reports he has lost
14  over 100 pounds and suffered severe health effects. *Id.* Plaintiff alleges his requests for more
15  nutritious religious meals have been denied with jail staff explaining that his faith does not
16  require a diet different from what is being provided. *Id.*

17  Plaintiff organizes his factual allegations into three counts for relief. Count I concerns
18  Plaintiff's ongoing state-court prosecution and alleges violations of his right to counsel and his
19  speedy trial rights. Dkt 1-1 at 6–7, 12–15. Count II concerns the medical treatment Plaintiff has
20  received at King County Jail and alleges violations of the Americans with Disabilities Act
21  ("ADA") and the Fourteenth Amendment to the United States Constitution. *Id.* at 8–9. Finally,
22  Count III concerns the religious meals provided to Plaintiff at King County Jail and alleges
23
24

ORDER DECLINING TO SERVE COMPLAINT - 2

violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2), and the Free Exercise Clause of the First Amendment. *Id.* at 9–10.

As relief, Plaintiff seeks an injunction aimed at (1) his ongoing state-court prosecution and (2) the medical services and religious meal services provided by King County Jail. *Id.* at 11. He also seeks compensatory damages on all three counts. *Id.*

## II.     Discussion

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Upon review, Plaintiff's complaint has several deficiencies that prevent him from stating a cognizable claim. Specifically, each of the following claims or categories of claims are deficient in some way: (A) Plaintiff's official capacity § 1983 claims, (B) his individual capacity § 1983 claims, (C) his Fourteenth Amendment medical needs claim, (D) his First Amendment and RLUIPA religious meal claims, (E) his state-court prosecution claims, and (F) his ADA

claim. The Court will address each deficiency below and, if applicable, explain how Plaintiff may cure the deficiencies in any amended pleadings.

**A.  Official Capacity § 1983 Claims**

Looking first to Plaintiff's § 1983 claims, construed liberally, Plaintiff has brought both individual and official capacity § 1983 claims. Even so, each of Plaintiff's official capacity claims are deficient because he has named an improper defendant and does not sufficiently identify a county policy or custom that caused his alleged injuries.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Where, as here, a suit involves a county, the county itself is the only legal entity capable of suing and being sued. *See Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990)). As a result, only the primary municipality, county, or local government unit (in this case, King County) can be sued as a "person" under § 1983. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978). In addition, when a county employee is sued in their official capacities, the county itself is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[An] official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). In other words, official capacity § 1983 claims brought against county officials are really claims against the county itself.

Still, once the proper defendant is identified, county liability cannot be established simply because a county employs someone who violates the law. *Monell*, 436 U.S. at 691–94. Instead, to hold a county liable under § 1983, a plaintiff must identify a county-level "policy" or

"custom" that caused his alleged injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).

Here, Plaintiff names Department of Adult and Juvenile Detention ("DAJD") (an agency of King County) as a defendant in Counts II and III. Dkt. 1-1 at 8–11. He also names several county agencies as defendants in Count I. *Id.* at 6–7, 12–15. However, the only King County entity capable of being sued under § 1983 is King County itself.

Therefore, in any amended pleadings, Plaintiff should omit any county agencies as defendants and, instead, name only the county itself. Additionally, as will be discussed in greater detail below, if Plaintiff wishes to bring any of his § 1983 claims against a county or county employee in their official capacities, he must identify the specific county policy or custom that caused his alleged injury.

B. **Individual Capacity § 1983 Claims**

As for Plaintiff's individual capacity claims, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how the individual defendants caused or personally participated in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). A plaintiff can establish causation only if they plausibly allege (1) a defendant affirmatively acted, participated in another's affirmative action, or failed to take a legally required action and (2) the defendant's action or failure to act caused the constitutional deprivation alleged. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

In some of his claims, Plaintiff alleges personal participation based on certain defendant's decisions to deny his grievances. However, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Therefore, it is not unconstitutional to simply "to deny a grievance." *Johnson v. Hayden*, No. 3:11-cv-539-ST, 2012 WL 652586, at *3 (D. Or. Feb. 10, 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Depending on the constitutional violation alleged, an individual who denies a grievance may be held liable only if their actions in reviewing the grievance show they were placed on notice of a potential constitutional violation and they failed to take action preventing that violation. *Starr v. Baca*, 652 F.3d 1202, 1205–08 (9th Cir. 2011). Where a defendant has no knowledge of a constitutional violation or is unaware of a risk of harm to a plaintiff, responding to a grievance is insufficient to establish personal participation. *Peralta v. Dillard*, 744 F.3d 1076, 1086–87 (9th Cir. 2014).

As will discussed in greater detail below, Plaintiff should only name an individual as a defendant if he can put forth sufficient facts demonstrating they personally participated in causing his constitutional injuries. If personal participation is based on a grievance decision, Plaintiff should take care to describe exactly what the defendant could have learned from the grievance and how the decision to deny the grievance caused his alleged constitutional injury.

C. **Medical Needs Claim**

Next, in Count II, Plaintiff complains about the allegedly inadequate mental health treatment he has received during his pretrial detention at King County Jail. Dkt. 1-1 at 8–9. Thus, the Court reviews this claim as a deliberate indifference to medical needs claim under the Fourteenth Amendment to the United States Constitution.

ORDER DECLINING TO SERVE COMPLAINT - 6

1    A pretrial detainee's right to adequate medical care arises under the due process clause of
2    the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).
3    The elements of such a claim are: (1) "the defendant made an intentional decision with respect to
4    the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at
5    substantial risk of suffering serious harm"; (3) "the defendant did not take reasonable available
6    measures to abate that risk, even though a reasonable official in the circumstances would have
7    appreciated the high degree of risk involved—making the consequences of the defendant's
8    conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's
9    injuries." *Id.* at 1125.

10   Plaintiff's medical needs claim is deficient in that it does not provide enough detail about
11   the treatment he received at King County Jail, who provided the treatment, and how the provided
12   treatment was inadequate. Plaintiff is advised that alleging "mere negligence" by a defendant is
13   not enough to state a Fourteenth Amendment medical needs claim. *Gordon*, 888 F.3d at 1125.
14   So, in any amended pleadings, Plaintiff should take care to explain how he was placed at a
15   substantial risk of harm while at King County Jail, what a reasonable medical provider would
16   have known about his medical conditions and the risk of harm he faced from improper treatment,
17   and what intentional actions specific defendants took or failed to take to prevent his injuries.

18   **D.    Religious Meal Claims**

19   In Count III, Plaintiff complains about the inadequate nutrition provided by the religious
20   meals served at King County Jail and identifies DAJD and Gregg Curtis as defendants for this
21   count. Dkt. 1-1 at 9–10. Although Plaintiff does not specify the legal source of his claims, the
22   Court construes Count III as alleging violations of RLUIPA and the Free Exercise Clause of the
23   First Amendment.

24

ORDER DECLINING TO SERVE COMPLAINT - 7

In order to establish a First Amendment violation, Plaintiff "must show that [a defendant] burdened the practice of [his] religion, by preventing [him] from engaging in conduct mandated by [his] faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (footnote omitted)). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). RLUIPA similarly prohibits prison officials from substantially burdening a prisoner's "'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.'" *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2009) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 997–98 (9th Cir. 2005)).

With respect to religious diets, prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). A substantial burden may occur when a facility's religious meal accommodations are so inadequate that a prisoner is forced to forego or significantly alter his religious practice to maintain proper nutrition. *See, e.g., Vincent v. Stewart*, 757 Fed. App'x 578, 580-81 (9th Cir. 2018) (refusal to provide plaintiff with a diet without "adverse physical effects" that "meets his religious needs substantially burden[s] his religious beliefs"); *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (failure to provide meat-based religious meals despite "adverse health effects" from vegetarian meals may constitute a "substantial burden" on religion).

However, "a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay." *Mason v. Twin Falls Cnty. Sheriff*, No. 3:23-cv-00570-AKB, 2024 WL 625401, at *4 (D. Idaho Feb. 14, 2024) (seven-day delay in accommodating religious diet was not a substantial burden); *Holiday v. Giusto*, No. 03-cv-01385-AS, 2004 WL 1792466 at *5 (D. Or. Aug 10, 2004) (eighteen-day delay in providing religious meals, caused by administrative delay, was not a substantial burden); *Tapp v. Stanley*, No. 04-cv-6400-CJS, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008)) (three-month delay in providing a prisoner with religious meals did not substantially burden his sincerely held religious beliefs). Nor does it violate RLUIPA, which provides penal institutions some leeway in accommodating religious diets. *Mason*, 2024 WL 625401, at *6. The availability of religious meal supplements available for purchase is also relevant to whether a substantial burden has been placed on an individual's sincerely held religious beliefs. *See, e.g., Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810–12 & n. 8 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees and some of those entrees he had to pay for himself); *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1272 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016) (same).

Plaintiff's religious meal claims are deficient because he does not specify his religion, nor does he sufficiently allege causation by either defendant named in these claims.

First, Plaintiff alleges the religious meals provided to him at King County Jail were inadequate to keep him in good health. Dkt. 1-1 at 9–10. Even with religious meal supplements available for purchase, Plaintiff alleges he was unable to maintain proper nutrition, and, over the course of a year, he has lost a substantial amount of weight and experienced significant adverse

health effects. *Id.* Although these allegations are indicative of a substantial burden, Plaintiff's claims are deficient because he does not connect the alleged substantial burden to a sincerely held religious belief. Stated differently, Plaintiff does not actually say what religion he follows that requires him to adhere to particular diet.

Second, Plaintiff does not sufficiently allege causation by either defendant named in Count III. Starting with Defendant DAJD, as explained above, the only county entity Plaintiff can sue under § 1983 is King County itself. However, even if Plaintiff had named the correct county defendant, he has failed to identify a King County policy or practice that caused his alleged injuries. Next, Plaintiff alleges Defendant Curtis personally participated in causing his injuries by denying Plaintiff's administrative grievance about his religious meals. However, Plaintiff does not provide sufficient detail about this grievance to establish personal participation.

In summary, if Plaintiff wishes to pursue his religious meal claims, he should again identify the substantial burden allegedly placed on his religious beliefs in any amended pleadings. He must also clearly identify what his religious beliefs are and explain how following a particular diet is required by his religion.

Additionally, Plaintiff must identify the specific defendants his religious meal claims are brought against and allege additional facts demonstrating their liability. For example, if he wishes to bring these claims against Defendant King County, he should take care to identify the specific county policy or practice that caused his alleged injuries. On the other hand, if Plaintiff wishes to bring these claims against any individual defendants, he must describe how they personally participated in causing his injuries. If personal participation is based on denial of a grievance, Plaintiff must provide additional facts demonstrating how the information provided in the grievance put the defendant on notice of a potential constitutional violation and a risk of

harm to Plaintiff. Plaintiff must also explain how, by denying the grievance, the defendant failed to prevent his injuries.

### E. State-Court Prosecution Claims

Plaintiff's remaining § 1983 claims concern his ongoing criminal prosecution in state court. In particular, Plaintiff alleges ongoing violations of his speedy trial rights and his right to effective assistance of counsel. Dkt. 1-1 at 6–7, 12–15. Upon review, neither of these claims may appropriately be heard in federal court under the *Younger* abstention doctrine.

Under *Younger*, abstention from interference with pending state judicial proceedings is appropriate when: "(1) there is 'an ongoing state judicial proceeding'; (2) the proceeding 'implicate[s] important state interests'; (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges'; and (4) the requested relief 'seek[s] to enjoin' or has 'the practical effect of enjoining' the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)). Federal courts, however, do not abstain under *Younger*, if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).

First, Plaintiff is a pretrial detainee with ongoing state proceedings. Second, as these proceedings involve a criminal prosecution, they implicate important state interests. *See Kelly v. Robinson*, 479 U.S. 36, 49, (1986); *Younger*, 401 U.S. at 43–44. Third, Plaintiff failed to show he has been denied an adequate opportunity to address the alleged constitutional violations in the state court proceedings. Fourth, Plaintiff raises claims that would effectively enjoin the ongoing

state judicial proceeding. Lastly, Plaintiff has not shown the sort of extraordinary circumstances that would make abstention inappropriate here.

Accordingly, Plaintiff's § 1983 claims concerning his state-court prosecutions are deficient under the *Younger* abstention doctrine and it is unlikely he will be able to cure this deficiency in any amended pleadings.[1] Plaintiff is advised the Court may recommend dismissal of any deficient speedy trial or ineffective assistance of counsel claims reasserted in his amended pleadings.

F.   **ADA Claim**

Turning finally to Plaintiff's ADA claim, this claim is deficient in a manner unlikely to be cured through amendment. Individuals housed in corrections facilities are protected by Title II of the ADA, which prohibits "public entities" from engaging in disability-based discrimination or excluding individuals from the benefits of its services or programs "by reason of" their disability. 42 U.S.C. § 12132; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

Plaintiff's ADA claim is deficient because (1) it is unclear whether he has identified a proper defendant for his claim and (2) he fails to allege he was denied the benefits of a public entity's services or programs by reason of—or because of—his disability.

First, the proper defendant for a Title II ADA claim is a "public entity," which is defined as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). This language is broad enough to include counties operating correctional facilities. *Armstrong v.*

---

[1] The Court further notes if Plaintiff seeks to invalidate his state court prosecution, he may not do so by filing suit under 42 U.S.C. § 1983. *See generally Bean v. Matteucci*, 986 F.3d 1128, 1132 (9th Cir. 2021) (citing *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016)). Instead, he must file a writ of habeas corpus under either 28 U.S.C. § 2241 (pre-conviction habeas provision) or 28 U.S.C. § 2254 (post-conviction habeas provision).

ORDER DECLINING TO SERVE COMPLAINT - 12

*Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). However, it does not include county employees working at correctional facilities. This means, Plaintiff may not bring his ADA claims against individual defendants.

Second and more importantly, the ADA prohibits public entities from excluding individuals from the benefits of their services or programs "by reason of" that individual's disability. 42 U.S.C. § 12132. This means, simply having a disability and being discriminated against is not enough to create liability under the ADA; instead, the disability must be the reason behind the discrimination. Here, Plaintiff does not allege his disability is the reason he has been denied adequate medical services at King County Jail.

Accordingly, Plaintiff's ADA claim is deficient, and it is unlikely he will be able to correct these deficiencies in any amended pleadings. Plaintiff is advised the Court may recommend dismissal of any deficient ADA claim reasserted in his amended pleadings.

### III. Instructions

Due to the deficiencies described above, the Court will not serve Plaintiff's complaint. If Plaintiff intends to pursue this § 1983 civil rights action, he must file an amended complaint and within it, he must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief must be simple, concise, and direct.

Plaintiff shall present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should contain the same

case number, and it may not incorporate any part of the previous complaints by reference. The amended complaint will act as a complete substitute for any previously filed complaint, and not as a supplement. Plaintiff should not attach exhibits to the amended complaint and any exhibit will not be considered as part of the amended complaint. The Court will not authorize service of the amended complaint on any defendant who is not specifically linked to a violation of Plaintiff's rights. And, as advised above, the Court may recommend dismissal of any deficient claims reasserted in the amended complaint. Finally, if Plaintiff fails to file an amended complaint or fails to adequately address the issues raised herein on or before May 23, 2024, the undersigned will recommend dismissal of this action.

   The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint and for service. The Clerk is also directed to send copies of this Order and *Pro Se* Instruction Sheet to Plaintiff.

   Dated this 23rd day of April, 2024.

/s/ David W. Christel

David W. Christel
United States Magistrate Judge